**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND HARRISON,** | : | |
| **(AIS # 186090)** | | |
| | : | |
| **Plaintiff,** | | |
| | : | **CIVIL ACTION 14-00085-KD-C** |
| **vs.** | | |
| | : | |
| **NOAH PRICE OLIVER,** *et al.*, | | |
| | : | |
| **Defendants.** | | |

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants' motion for summary judgment (Docs. 13, 18).  For the reasons stated below, it is recommended that summary judgment be granted in favor of Defendants Mobile County Metro Jail Warden Noah Price Oliver, Mobile County Sheriff Sam Cochran, the Mobile County Sheriff's Department, Mobile County Metro Jail Personnel, and two Transportation Officers, and the claims presented by Plaintiff Raymond Harrison be dismissed with prejudice.

**I.    Summary of Alleged Facts[1]**

---

[1]     The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.  Priester v. City of Riviera Beach, Fla, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citations and internal quotation marks omitted); see Cottone v. Jenne, 326 F.3d 1352 n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be actual facts.").  Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to Plaintiff and disregards legal conclusions and recitations of the basic elements of a cause of action.  See Mamani v. Berzain, 654 F.3d 1148,

This action arises from the over-detention of Plaintiff Harrison.  Harrison was imprisoned at Limestone Correctional Facility ("Limestone") with an estimated release date of October 30, 2013.  (Doc. 1 at 3).  While housed at Limestone, Harrison participated in and completed courses at Calhoun Community Junior College and secured employment for himself with Dunn Construction Company in Birmingham, Alabama.  (Id.).  Upon his release from prison, Harrison was expected to attend orientation with Dunn Construction Company on October 31, 2013, and then begin employment on November 1, 2013.  (Id.; Doc. 29 at 1).  However, Harrison's plans were fortuitously altered on October 30, 2013, when he was not released from Limestone as a free man; rather, he was detained and transferred to Mobile County Metro Jail ("Mobile Metro") for an alleged pending charge against him.  (Doc. 1 at 7).

Transportation officers arrived at approximately 11:10 a.m. on October 31, 2013, to transport Harrison to Mobile Metro.  (Doc. 13-1 at 24).  Harrison attempted to explain that the alleged outstanding charge was in fact a mistake, as he had paid a bond on the charge two years earlier.  (Doc. 1 at 7).  Despite his verbal attempts to persuade the officials and his presentation of legal documents evidencing the executed bond from August 2011, he was restrained in hand and leg cuffs and transported from Limestone to Mobile Metro, without being secured in a seat-belt and without being provided any food or water for the duration of the transport, notwithstanding notifying the transportation officers that he suffered from Type II diabetes.  (Id. at 7-8).  Upon arrival at Mobile Metro, after approximately 10 hours of traveling, Harrison was booked into the jail, received a medical screening, and was provided food.  (Doc. 17 at 2).  He spent less than eight hours in a cell before being released from Mobile Metro on November 1,

---

1153 (11th Cir. 2011); McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

2013.  (Id.).

Respondents do not contest Harrison's version of events; however, their submitted special report clarifies and explains the inadvertent over-detention of Harrison.  (Doc. 13).  The Alabama Department of Corrections notified Mobile Metro in early October 2013 that Harrison was due to be released from Limestone at the end of October but that outstanding charges remained for him in Mobile County.  (Doc. 13 at 1).  Mobile Metro staff consulted two different electronic filing systems to review the status of charges pending against Harrison.  AlaCourt, the state electronic filing system, as well as JMS, the Mobile Metro Jail's internal filing system, both revealed that Harrison had an outstanding charge from 2011 of receipt of stolen property in the second degree, for which he had not made bond.  (Doc. 13-1 at 8).  Based on the database information, transportation officers were sent to retrieve Harrison from Limestone and bring him to Mobile Metro.  (Doc. 13 at 1; Doc. 13-1 at 5).

Upon Harrison's return to Mobile Metro, it was determined that he signed bond for the charge on August 4, 2011, however the bond release information was never entered into the AlaCourt system.  (Doc. 13 at 1; Doc. 13-1 at 8-9).  The investigation into Harrison's 2011 bond did not expose why the AlaCourt database was not updated with the bond information nor whose responsibility it had been to input the bond information.  (Doc. 13 at 1-2).  Consequent to uncovering that Harrison had in fact made bond on his 2011 charge, he was immediately released from Mobile Metro, and the AlaCourt database was updated with the correct information. (Doc. 13 at 2; Doc. 13-1 at 2, 8).

Harrison brought suit against Mobile County Metro Jail Warden Noah Price Oliver, Mobile County Sheriff Sam Cochran, the Mobile County Sheriff's Department,

Mobile County Metro Jail Personnel, and the Transportation Officers who transported him from Limestone to Mobile Metro on October 31, 2013, for wrongful detention for over-detaining him, neglectful supervision that resulted in over-detention, and reckless endangerment during his transportation from Limestone to Mobile Metro.[2]  (Doc. 1). He seeks monetary relief in the amount of $250,000.00 for damages suffered.

Defendants, Mobile County Sheriff Sam Cochran and Noah Price Oliver, III, Warden of Mobile County Metro Jail, answered the suit (docs. 13, 18),[3] and the Court converted Defendants' answer and special report to a motion for summary judgment. (Doc. 14).  Plaintiff Harrison filed numerous responses to the motion for summary judgment.  (Docs. 17, 20, 21, 22, 23, 26, 29, 30).  After a thorough review of the record, the motion for summary judgment is now ripe for consideration.

## II.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the

---

[2]      On December 6, 2013, a warrant was issued for the arrest of Harrison for his failure to report to his probation officer after his release from prison on November 1, 2013.  (Doc. 13-1 at 11).  At the time Harrison filed this action, he was and currently is imprisoned for probation revocation on the charge of theft of property in the second degree.  (Id.).  Harrison claims "had this unjust[ice] never happened I would not be facing this charge of receiving stolen property I . . . because I would have been on the Keystone Pipeline in Spoken [sic], Washington.  Not in Brewton, AL & Hired a ride in a already stolen vehicle!"  (Doc. 1 at 6).

[3] Corporal Auston Durgin, the male Mobile County Sheriff's Office Transportation Officer who transported Plaintiff Harrison from Limestone to Mobile Metro on October 31, 2013, submitted an affidavit as part of Defendants' special report.  (See Doc. 13-2).

parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").  Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993); see also Allen, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial."') internal citations omitted); see Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent

the award of summary judgment upon a court's determination that no genuine issue for trial exists.

Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom.* Jones v. Resolution Trust Corp., 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); see Comer, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the Court has viewed the facts in the light most favorable to Plaintiff.  Comer, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to the material facts."  A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

Garczynski, *supra*, 573 F.3d at 1165 (internal citations omitted).  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  Resolution Trust Corp.,

*supra*, 43 F.3d at 599.

## III.  Analysis.

### A.     Fictitious Parties and Defendants Immune from Suit.

#### 1.       Fictitious Party Pleading.

In authoring his suit, Harrison named two "Transportation Officers assigned to pick me up from Limestone Co. Jail on 10-31-013 [sic]" as defendants in this action. (Doc. 1 at 2).  "As a general matter, fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also CSX Transp., Inc. v. United Transp. Union, 236 F. App'x 562, 563 n.1 (11th Cir. 2007) ("the Federal Rules do not authorize suit against fictitious parties"), *cert. denied*, 552 U.S. 1243, 128 S. Ct. 1475, 170 L. Ed. 2d 297 (2008); Featherstone v. Home Oil Co., 2011 U.S. Dist. LEXIS 139102, 2011 WL 5978774, at *1 n.4 (S.D. Ala. Nov. 8, 2011) (subject to a limited exception, "fictitious party practice is not permitted in federal court").  The limited exception to this rule is when the plaintiff's description of the defendant is so specific as to be "at the very worst, surplusage."  Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992).

Generally, Harrison's attempt to file suit against "two Transportation Officers" would be an inadequate identification of persons necessary to file a § 1983 action against them.  However, the Court finds Harrison sufficiently described the unnamed defendants to overcome the bar to pleading a fictitious party.  Harrison specified the date, times, geographic location of his transport, as well as the race and sex of the officers.  (Id. at 4).  Therefore, the Court contends that necessary facts were provided to identify the unnamed officers.  As such, the unnamed parties are considered defendants to this action.

2.      Sovereign Immunity.

Plaintiff Harrison alleges violations of both the Eighth and Fourteenth Amendments of the United States Constitution against Mobile County Sheriff's Department and Mobile County Metro Jail[,] pursuant to 42 U.S.C. § 1983 for "neglectful supervision" that caused his over-detention and reckless endangerment.  (Doc. 1 at 4).  The Mobile County Sheriff's Office and the Mobile County Metro Jail are entities that are not capable of being sued in Harrison's action.

In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law."  Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted).  Under § 1983 liability can only be imposed against an entity that is capable of being sued, Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992), that is a "person acting under color of law."  See Wideman, 826 F.2d at 1032.

The capacity of a party to be sued is "determined by the law of the state in which the district court is held[.]"  Fed. R. Civ. P. 17(b); see Dean, 951 F.2d at 1214 (The capacity of a sheriff's department to be sued "is determined . . . by the law of the state

---

[,]  The complaint filed by Harrison specifically names "Mobile County Metro Jail personell [sic]" as a defendant in this lawsuit.  (Doc. 1 at 4).  Given that Harrison failed to identify any officer or staff member by name, job description, or action performed, the Court assumes Harrison intended to sue the Mobile County Metro Jail in its entirety for the alleged wrongdoing that occurred on October 30, 2013 through November 1, 2013.

If the Court's assumption is incorrect, Harrison's suit against the Mobile County Metro Jail Personnel still fails, as discussed above, because "fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  Furthermore, it is immaterial as to whether or not Harrison sufficiently identified staff members of the Mobile County Metro Jail as defendants in this action, as the Court has determined, *infra*, that no party is liable in this action as Harrison has failed to prove a constitutional violation.

where the court is located.").

Under Alabama law, the sheriff "has the legal custody and charge of the jail in his county and all prisoners committed thereto. . . ."  Ala. Code § 14-6-1.  Generally, a sheriff's department operates a county jail.  However, an Alabama sheriff's department lacks the capacity to be sued.  Dean, 951 F.2d at 1214; King v. Colbert County, 620 So.2d 623, 626 (Ala. 1993); White v. Birchfield, 582 So.2d 1085, 1087 (Ala. 1991).  Then, it follows that an Alabama county jail likewise lacks the capacity to be sued.  Russell v. Mobile County Sheriff, No. Civ. A. 00-0410-CB-C, 2000 U.S. Dist. LEXIS 18045, 2000 WL 1848470, at *3 (S.D. Ala. Nov. 20, 2000) (unpublished) (finding that the Mobile County Jail is not a suable entity); Marsden v. Federal Bureau of Prisons, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable to suit); House v. Cook Cnty. Dep't of Corrs., No. 98 C 788, 1998 U.S. Dist. LEXIS 2262, 1998 WL 89095, at *2 (N.D. Ill. Feb. 13, 1998) (unpublished) (same); May v. N. Cnty. Det. Facility, No. C 93-1180 BAC, 1993 U.S. Dist. LEXIS 10500, 1993 WL 300290, at *2 (N.D. Cal. July 21, 1993) (unpublished) (same); see also Castillo v. Cook Cnty. Mail Room Dep't, 990 F.2d 304, 307 (7th Cir. 1993) (finding that because the jail is not a suable entity, then it follows that the subdivision, the mail room, is not a suable entity).  Therefore, the Court finds that Mobile County Sheriff's Department is not a suable entity or a person for § 1983 purposes, and Mobile County Metro Jail is not a suable entity or person for § 1983 purposes.  Accordingly, Plaintiff's claims against these Defendants are frivolous as a matter of law and should be dismissed.

With respect to the remaining Defendants in this action, it is unclear to the Court whether or not Harrison has sued them in their official or individual capacities.  If Harrison has intended to sue Defendants in their official capacities, the individual

defendants claim they are entitled to Eleventh Amendment immunity as state officials. (Doc. 18 at 1).  It is well-established that "suits against an official in his or her official capacity are suits against the entity the individual represents."  Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989); see also Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 690 n.55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) (indicating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); Welch v. Laney, 57 F.3d 1004, 1007 (11th Cir. 1995); Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir. 1990). The determination of the entity which the officials represent is determined by reference to state law.  See Welch, 57 F.3d at 1008.  As a matter of Alabama law, Sheriff Cochran is a state officer within the executive department of state government.  See Parker v. Amerson, 519 So. 2d 442, 443 (Ala. 1987).  Likewise, a warden of county jail, such as Warden Oliver, and sheriff's deputies and officers, such as the transportation officers, are legally an extension of the sheriff, and their acts are considered those of the sheriff.  See Mosely v. Kennedy, 245 Ala. 448, 17 So. 2d 536, 537 (1944).  Accordingly, all defendants in this action are state officials for the purposes of immunity from suit. See Welch, 57 F.3d at 1008; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990).

As such, Plaintiff's claims against the individual defendants in their official capacities are effectively claims against the State of Alabama.  The Supreme Court has held that states and state officials are not "persons" subject to liability under 42 U.S.C. § 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).  Moreover, pursuant to the Eleventh Amendment to the U.S. Constitution, a state may not be sued by its own citizens unless the state consents to suit or Congress acts to abrogate immunity.  See Carr, 916 F.2d at 1524-25.  Neither has happened in this case.  Therefore, the individual

10

defendants enjoy absolute immunity from the damages claims raised against them by Harrison in their official capacities.

        3.     Qualified Immunity.

Defendants have further invoked the defense of qualified immunity for the claims asserted against them in their individual capacities.  (Doc. 18 at 1).  "Qualified immunity insulates government actors, in their individual capacities, from civil lawsuits as long as the challenged discretionary conduct does not violate clearly established federal statutory or constitutional rights." Adams v. Poag, 61 F.3d 1537, 1542 (11th Cir. 1995); see also Belcher v. City of Foley, Ala., 30 F.3d 1390, 1395 (11th Cir. 1994).  There can be no dispute that all parties were acting within their discretionary authority at all times when the acts in question occurred.  Therefore, Defendants are entitled to qualified immunity unless Harrison can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known.  See Belcher, 30 F.3d at 1395; Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997).  "General propositions and abstractions do not qualify for bright line, clearly established law.  For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. Ala. 1998) (internal citations omitted).  Therefore, the Court will now address whether or not this action asserts any claim of a constitutional violation.

**B.     No Fourteenth Amendment Violation in Over-Detention.**

Although Harrison describes his claim against Defendants as wrongful detention, the allegation is better termed over-detention.  Harrison, however, fails to

establish a plausible constitutional violation claim against Defendants, as the record does not support the allegations that Harrison's Fourteenth Amendment right to due process was violated by being detained for one day after his prison sentence expired.

With respect to a false imprisonment claim based on over-detention "the Due Process Clause of the Fourteenth Amendment guarantees to individuals the right to be free from excessive continued detention after a jail or prison ceases to have a legal right to detain the individual." Powell v. Sheriff, Fulton Cnty., Ga., 511 Fed. App'x 957, 960 (11th Cir. Mar. 7, 2013) (unpublished).  To state an over-detention claim under the Fourteenth Amendment, the elements of false imprisonment under common law must be met in addition to establishing a violation of the Fourteenth Amendment's due process rights.  See Cannon v. Macon Cnty., 1 F.3d 1558, 1562-63 (11th Cir. 1993).

The elements of common law false imprisonment require: "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm."  Id. at 1563 n.3 (citation and quotation marks omitted).  And, a due process violation requires a showing that the defendant acted with deliberate indifference to the plaintiff's due process rights.  West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007).  To show deliberate indifference, a plaintiff must establish that a defendant had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence."  Id. (citation and quotation marks omitted).  "Th[is] deliberate indifference standard is a difficult burden for a plaintiff to meet," because human error does not equate to deliberate indifference. Id. (citations and quotation marks omitted).

Turning to Plaintiff's allegations against Defendants, the Court finds that they do not contain information indicating that any defendant had knowledge of Harrison's signed bond or dismissal order and then disregarded the same in a manner that is greater than negligence.[5]  To state a claim of false imprisonment against defendants, Plaintiff Harrison must provide specific information that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  The information must be more than conclusions so as to raise the claim from the speculative to the plausible and thereby show that Harrison is entitled to relief.[6]  Id.; Twombly, 550 U.S. at 555, 557.  Harrison fails to make a direct allegation against Defendants Oliver, Cochran, or either transportation officer that he or she knew that the charge against him was inactive or that he made bond on the charge in question two years prior.  Furthermore, the record before the Court, including affidavits of staff

_____

[5]      Although the Court does not rely on Plaintiff's characterization and word choice to satisfy essential elements of a claim or to denote legal relevance, it is interesting to note that Plaintiff uses the word negligence several times in his pleadings as the cause for his over-detention.  Harrison states that the Defendants are liable "from the Negligence of unlawful imprisonment on 10-30-13" (doc. 17-2 at 4) (emphasis omitted) and this "Negligence has literally changed the course of [his] life" (emphasis omitted) (doc. 1 at 9); "[t]herefore [he is] seeking compensation for these negligence and lost [sic]." (Doc. 1 at 10).

[6]      In response to Defendants' special report, Plaintiff Harrison correctly identifies that Mobile Metro was alerted to the mistaken charge 28 days prior to his estimated release date. (Doc. 22-1 at 1-2).  He suggests that the parties therefore had substantial notice and time to investigate the alleged charge against him and should have discovered the inaccuracy of the AlaCourt records prior to his being transported to Mobile Metro and being over-detained.  However, Plaintiff fails to recognize that before he personally notified officials that the state records were incorrect, the officials had no reason to suspect the computer databases were inaccurate.  The evidence submitted by Defendants details the communications that occurred between the Alabama Department of Corrections, the Mobile County District Court, Mobile County Sheriff's Office, and the Mobile County Jail Records Specialist in early October 2013 and then late October 2013.  (Doc. 13-1 at 12-15).  The emails, despite Plaintiff's contention, in fact show that Defendants reasonably relied on the computer system and did attempt to investigate and verify the alleged charge pending against Harrison.  Again, the records show it was mere negligence, at worst, that caused the mistaken over-detention of Plaintiff.  Once Plaintiff advised Mobile Metro officials that he had previously signed a bond on the charge for which he was being held, the situation was investigated beyond the computer databases and quickly rectified, Plaintiff was immediately released, and the state computer systems were updated. (Doc. 31 at 3-4).

who investigated the October 31, 2013 transfer of Harrison, email correspondence, and computer print outs all reflect that it was an inadvertent computer error that caused Harrison's over-detention, and that error was rectified as quickly as possible.  Thus, in absence of specific information indicating deliberate indifference on the part of any defendant, the Court concludes that Harrison has failed to state a plausible claim for false imprisonment against Defendants Oliver, Cochran, and the two transportation officers.  See also, West v. Tillman, 496 F.3d 1321 (11th Cir. 2007) (No constitutional violation for over-detention of plaintiff where no deliberate indifference was evidenced. "[T]he evidence shows – at most – that Defendants . . . were negligent in failing to carry out their responsibilities."); Powell v. Sheriff, 511 Fed. App'x 957 (11th Cir. 2013) (No constitutional violation for a jail's known over-detention problem where there was no evidence of a custom or policy adopted by sheriff that created the over-detention problem, and the sheriff took actions to correct the problem.  And no evidence supported finding nonsupervisory defendants were deliberately indifferent.); Pritchett v. Bates, 2:12-00084-CG-B, 2013 U.S. Dist. LEXIS 102443 (S.D. Ala. June 24, 2013) (no constitutional violation for over-detention where plaintiff failed to prove defendant "had knowledge of the dismissal order and then disregarded the order in a manner that is greater than negligence.").  At worst, Harrison's over-detention was caused by the negligence of non-supervisory officials, which is not sufficient to support a § 1983 claim. See West, 496 F.3d at 1327-29.

### C.   No Eighth Amendment Violation During Transport.

Plaintiff Harrison alleges Defendants are further liable for endangering his safety and treating him cruelly during his transport from Limestone to Mobile Metro on October 31, 2013.  He contends he was: (1) denied food for the duration of his ten and

14

half hour bus ride, despite notifying the transportation officers that he suffered from diabetes (doc. 1 at 7-8), (2) denied his request for a seat belt (doc. 17-2 at 4), (3) was placed in full restraints for the duration of the transport (doc. 1 at 7), and (4) placed in a two-man cell with three other inmates for eight hours while housed at Mobile Metro (id. at 8).

The Eighth Amendment[7] provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical

---

[7]     Harrison's claims relate to his treatment and conditions of confinement during his transport to Mobile Metro Jail.  However, because Harrison's claims arise from his mistaken over-detention, it is likely that Harrison should be characterized as a pretrial detainee and his allegations sound properly in the Fourteenth Amendment.  See Taylor v. Adams, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000); Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 n.4 (11th Cir. 1995);  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985).  Nevertheless, condition of confinement claims are analyzed the same regardless of whether such arise under the Due Process Clause of the Fourteenth Amendment or under the Eighth Amendment. Id.  Accordingly, the Court can rely upon both Eighth Amendment and Fourteenth Amendment cases in ruling upon Defendants' Motion for Summary Judgment. Id.

> care, and reasonable safety -- it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on an Eighth Amendment claim, an inmate must make both

an objective and a subjective showing. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994),

the court delineated the objective and subjective portions of an Eighth Amendment

claim as follows:

> An Eighth Amendment claim is said to have two components, an objective
> component, which inquires whether the alleged wrongdoing was
> objectively harmful enough to establish a constitutional violation, and a
> subjective component, which inquires whether the officials acted with a
> sufficiently culpable state of mind.

25 F.3d at 983.  To prevail on constitutional claims like the ones asserted by Plaintiff, he

must prove that there was "a substantial risk of serious harm," that the defendants were

subjectively deliberately indifferent to that risk, and causation.  Hale, 50 F.3d at 1582;

see also Farmer, 511 U.S. at 832-34.

The objective component of an Eighth Amendment claim inquires whether the

alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon

the prisoner." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).  This standard

requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511

U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271

(1991)).  The objective standard "embodies broad and idealistic concepts of dignity,

civilized standards, humanity, and decency ..., but must be balanced against competing

penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97,

102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires

whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at

16

983-84 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156

(1992)). This component "follows from the principle that 'only the unnecessary and

wanton infliction of pain implicates the Eighth Amendment.'" <u>Farmer</u>, 511 U.S. at 834

(quotation and citation omitted).  In prison conditions cases, the required state of mind

for a defendant is "deliberate indifference" to an inmate's health or safety. <u>Id</u>. (citations

omitted).  In defining "deliberate indifference," the Supreme Court in <u>Farmer</u> stated:

> We hold ... that a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of confinement
> unless the official knows of and disregards an excessive risk to inmate
> health or safety; the official must both be aware of facts from which the
> inference could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. The Court concluded that the "subjective recklessness" standard

of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id.

at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he

should have perceived but did not . . . ."  <u>Farmer</u>, 511 U.S. at 838.  It is not enough that

an inmate proves that the defendant should have known of the risk, but did not, as

actual knowledge is the key. <u>See</u>, *e.g.*, <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir.

1996). A prison official's duty under the Eighth Amendment is to ensure "reasonable

safety," "a standard that incorporates due regard for prison officials' 'unenviable task of

keeping dangerous men in safe custody under humane conditions.'" <u>Farmer</u>, 511 U.S. at

844-45 (citations omitted).

Having set forth the general legal principles relevant to Harrison's claims, the

Court now turns to the application of those legal principles to the facts before the Court.

### 1.  No food provided during transport.

17

In his complaint, Plaintiff alleges that he was deprived of meals and snacks while he was transported from Limestone to Mobile Metro.  Harrison asserts the following exchange occurred at the time he boarded the bus to Mobile Metro:

> [He] advised the Transportation Officers (both) male and female officers "I am a Type II Diabetic.  Would you please at least get a few snacks to help regulated my 'blood suga level.'"  His reply, "It's 11:00 am y'all just had lunch.  Man get in the van."

(Doc. 1 at 7-8) (capitalization edited).  Contrary to Plaintiff's contention, Transportation Officer Durgin affirms that he was never privy to knowledge that Harrison suffered from diabetes.  (Doc. 13-2 at 2).   However, at the summary judgment stage, the Court is bound to review the facts in a light most favorable to the plaintiff.  See Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

The record reflects Mobile County's policy, due to security concerns, is to not provide food to inmates during prison transports.  (Doc. 13 at 2).  The standard protocol is that inmates eat before they are bused and again once they are safely secured at Mobile Metro. (Id.).  This customary practice was followed on October 31, 2013, as Defendants contend, and Harrison does not deny, that Harrison was fed breakfast and lunch prior to being bused to Mobile, Alabama, and Harrison was again provided food once he arrived at Mobile Metro.  (Doc. 13 at 2; Doc. 17 at 2).  Additionally, Harrison has complained of no injury as a result of the deprivation or delay in receiving food.  (Doc. 13-2 at 2).  Additionally, Harrison has not alleged that he ever notified either transportation officer during the transport or at any of the stops along the way that he was having diabetic symptoms or suffering from blood sugar issues.  There is no indication in the record that Defendants had any subjective intent to deprive Harrison

18

of food in an attempt to punish or cause him harm.  See Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (Essential to establishing an Eighth Amendment claim, a plaintiff must first show that the defendants' conduct was "sufficiently serious to constitute a cruel or unusual deprivation - - one denying the minimal civilized measure of life's necessities.  Second, there must be a subjective intent by the public officials involved to used the sufficiently serious deprivation in order to punish.") (citations and internal quotations omitted).  Simply stated, Plaintiff's allegations related to his treatment during his transport to Mobile Metro do not amount to the denial of a basic human need, nor do they evidence a deliberate indifference to a substantial risk of serious harm to plaintiff's health or safety.  See Farmer, 511 U.S. at 837-38; see also Comer, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").  Thus, Plaintiff Harrison has failed to establish a genuine issue for trial and this claim should be dismissed.

### 2.  No seatbelt during transport.

Also at issue in this action is Harrison's claim that due to "the Risky & High Percentage Probability of being in - or – causing a[n] Auto Accident" (doc. 1 at 9), Defendants are liable for recklessly endangering his life by transporting him in a "divided van (dog cage style) 2 feet wide by 7 feet in length" without the protection of a seat belt.  (Doc. 1 at 7) (capitalization omitted).  Harrison fails to mention any injury that occurred to him as a result of being transported in the van to Mobile Metro.  More importantly, there is no indication in the record or allegation made by Plaintiff that he was denied a seat belt or forced to ride in the van as punishment.  Instead, Plaintiff Harrison rests on his sole allegation that his transport without a safety restraint was a

19

deprivation of his constitutional rights.

This Circuit has determined that transportation of inmates without seat belts, alone, does not rise to the level of a constitutional violation.  In Smith v. Sec'y, Dept. of Corr., 252 Fed. App'x 301, 304 (11th Cir. 2007), the Eleventh Circuit examined whether or not transporting inmates in converted utility vans that were not equipped with manufacturers' seat belts satisfied the objective component of the deliberate indifference standard and was thereby an Eighth Amendment violation.  The Court relied on an Eighth Circuit case, Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 904-06 (8th Cir. 1999) (Plaintiff in the case was forced to ride on a steel bench in the back of a van without any safety restraints.  The plaintiff was thrown from the seat during transport and paralyzed due to the fall.  The Eighth Circuit, however, found that this practice did not rise to the level of a constitutional deprivation.), as persuasive authority and determined that riding in a van without seats, seat belts or windows was not a deprivation of the minimal measure of life's necessities or was it something that modern society would find intolerable.  Smith, supra, at 303-04; see also, Quinlan v. Pers. Transp. Servs. Co., LLC, 329 F. App'x 246 (11th Cir. 2009) (No constitutional violation when inmate was shackled and transported without a seatbelt from Illinois county jail to Florida prison.); Poulin v. Jeter, 6:08-cv-299-Orl-31KRS, 2010 U.S. Dist. LEXIS 96483, 35-36, 2010 WL 3701384 (M.D. Fla. Sept. 15, 2010) (Transporting prisoners in vans without seatbelts does not amount to a constitutional violation.); Bryant v. Downs, 6:09-cv-1670-Orl-28KRS, 2010 U.S. Dist. LEXIS 63919, 15-16, 2010 WL 2593564 (M.D. Fla. June 29, 2010) ("Plaintiff has failed to state a colorable claim for relief"

because "[t]he Eleventh Circuit has determined that transporting prisoners in vans without seatbelts does not amount to a constitutional violation.").

Thus, given the precedent of the Eleventh Circuit and the lack of further allegations, the Court determines there is no factual issue for trial and this claim should be dismissed.[8]

### 3.  Use of restraints during transport.

In so much as Harrison challenges that the use of full body restraints while being transported was excessive force or cruelty in violation of his constitutional rights, he has failed to show that this use of force "shocks the conscience." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) ("A jailor's use of force . . . is excessive . . . if it shocks the conscience," however, "[t]he use of force does not shock the conscience if it is applied in a good-faith effort to maintain or restore discipline") (internal quotations omitted).  The "core judicial inquiry" in an Eighth Amendment claim for excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1991) (citations omitted).  In Hudson, the Supreme Court held that the extent of a plaintiff's injuries is one factor in determining whether the force was applied maliciously and sadistically, but it is not determinative.  Id. at 7. Other factors relevant to this inquiry include lithe need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably

---

[8]    In the alternative to dismissal for finding no constitutional violation, Defendants would be entitled to dismissal based on qualified immunity had the Court determined there to be a violation.  With no clearly established law on this issue, Defendants would be immune from suit.  See Adams v. Proag, 61 F.3d 1537, 1542 (11th Cir. 1995).

perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  Id. (quoting Whitley v. Albers, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).  In so holding, the Court in Hudson rejected any requirement that a plaintiff asserting an excessive force claim establish that the force caused significant injuries.  Id. at 7.

Plaintiff has not established that the Transportation Officers used unnecessary or excessive force against him.  "A jailor's use of force . . . is excessive . . . if it 'shocks the conscience.'"  Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (quoting Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008)).  "The use of force does not 'shock the conscience' if it is applied 'in a good-faith effort to maintain or restore discipline.'"  Id. (quoting Hudson, 503 U.S. at 7)).  The use of handcuffs and leg cuffs in the instant situation does not "shock the conscience."  Transportation Officers were transporting prisoners across the state.  It is reasonable that the drivers would restrain the prisoners for the safety of guards and inmates.  The amount of force in this case was not excessive as Plaintiff has not established that the use of the handcuffs was done maliciously or that there was not a need for him to be handcuffed.  Thus, Plaintiff has failed to state a cognizable claim for use of excessive force, and summary judgment should be granted in favor of Defendants with respect to this claim and the instant claim is dismissed.

### 4.  Overcrowded Cell.

In this action, Harrison asserts he was subjected to "cruelty . . when after being booked in to Mob[ile] Co. Metro Jail, Plaintiff was housed in the 2-man cell, already occupied by 3 men . . . for 8 hours."  (Doc. 17-2 at 4).  To state a valid claim, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious

harm." Farmer, *supra*, 511 U.S. at 834; see also Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) ("The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities', are sufficiently grave to form the basis of an Eighth Amendment violation" and required the inmate to show deliberate indifference on part of prison officials.). Plaintiff, however, has failed to set forth sufficient factual allegations in this action "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555.  Plaintiff was held in a crowded cell for a mere eight hours.  He does not complain of unsanitary conditions or violence due to the overcrowding.  On the contrary, Plaintiff makes one conclusory argument that being housed with three other men in a "two-man" cell was cruel.  (Doc. 1 at 8; Doc. 17 at 2).

The law is clear, crowding of a prison does not, standing alone, create a constitutional violation.  See *e.g.* Brown v. Plata, 131 S. Ct. 1910, 1959, 179 L. Ed. 2d 969, 2011 WL 193607, * 41 (2011) (Alito, dissenting) ("The Eighth Amendment imposes an important — but limited—restraint on state authority in this field [and] the current population level [in a prison] is not itself unconstitutional."), citing Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (The Eighth Amendment prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities" and no such deprivation based on "double-celling" the inmates was established.).  Consequently, Plaintiff cannot prevail on his claim of overcrowding at Mobile Metro.  Therefore, the undersigned finds Plaintiff Harrison's allegations are not sufficient to allow the Court to draw the conclusion that the alleged overcrowding "is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010).  Harrison has,

therefore, failed to carry his burden of establishing the needed elements to state a viable constitutional claim; thus, Defendants' motion for summary judgment should be granted on this claim and this claim should be dismissed.

### C.    No violation for failure to train or supervise.

Plaintiff claims Defendants Oliver and Cochran are responsible as supervisors for unconstitutional acts that occurred by and during his over-detention.  (Doc. 1 at 4).  To state a successful claim, Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights.  See Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009); Trotter v. Corr. Medical Servs, Inc., 2008 WL 2225696, *9 (S.D. Ala. 2008).  Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*.  See Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support their § 1983 claim. . . .").  "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted).  "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the

subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted).  In such instances, Plaintiff must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted).  "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted). Plaintiff has not alleged that the Defendants Oliver and Cochran were personally involved in his over-detention. Furthermore, the Court has determined no constitutional violation occurred due to Plaintiff's over-detention and treatment during his transport to Mobile Metro.  Therefore, Defendants Oliver and Cochran cannot be liable for unconstitutional acts as supervisors where no constitutional violation has occurred.  See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting that a supervisor is liable under § 1983 only if he personally participates in unconstitutional conduct or if his actions can be connected causally to a constitutional deprivation.); Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) (providing that a municipality's § 1983 liability is premised upon an underlying constitutional violation.).  Therefore, all claims against Defendants Oliver and Cochran should be dismissed.

**IV.  Conclusion.**

That Plaintiff was not released from prison on October 30, 2013 is unfortunate. Mistakes were made, particularly by uninvolved parties, and Harrison missed an employment opportunity by less than 16 hours.  But, no one is entitled to an error-free bureaucracy; and the federal constitutional standard of deliberate indifference is a high

25

standard to meet.  As a matter of law, the record does not show that Defendants were deliberately indifferent to Plaintiff's right to be released on October 30, 2013; instead, the evidence indicates that Harrison was over-detained for approximately a day and a half, and the errors that led to the over-detention were caused by - at worst – nonsupervisory staffers.  In fact, the record reveals that the matter was promptly investigated and Plaintiff Harrison was released expeditiously once the inadvertent computer error or data entry error was recognized.

Based upon the foregoing reasons, the undersigned recommends that summary judgment be granted in favor of Defendants Mobile County Metro Jail Warden Noah Price Oliver, Mobile County Sheriff Sam Cochran, the Mobile County Sheriff's Department, Mobile County Metro Jail Personnel, and two Transportation Officers, and this action be dismissed in its entirety for failure to state a valid § 1983 claim.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." Dupree v. Warden, Attorney Gen., State of Ala., 715 F.3d 1295, 1300 (11th Cir. 2011).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely

incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 10th day of February 2015.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE